1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AXIS Surplus Insurance Company, an Illinois company,<br><br>Plaintiff,<br><br>v.<br><br>United National, LLC, formerly a Washington limited liability company; Troy X. Kelley and Diane Kelley, individuals; and Old Republic Title, Ltd., a Washington company,<br><br>Defendants. | No.:<br><br>COMPLAINT FOR DECLARATORY JUDGMENT<br><br>**JURY DEMAND** |

AXIS SURPLUS INSURANCE COMPANY (AXIS), for its Complaint for

Declaratory Relief, states and alleges as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1.   This is an action for declaratory relief.

2.   AXIS is an insurance company incorporated under the laws of Illinois and

authorized to do business in Washington.  AXIS's principal place of business is in Illinois.

COMPLAINT FOR DECLARATORY JUDGMENT                              Page 1

**Bullivant|Houser|Bailey PC**
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089
Telephone: 503.228.6351

3.      Defendant United National, LLC (United National), is a dissolved Washington LLC, transacting business in King County, Washington.  United National was dissolved on or about August 12, 2008.

4.      Troy Kelley and Diane Kelley are husband and wife.  On information and belief, the Kelleys reside in King County, Washington.

5.      Old Republic Title, Ltd., is a Washington corporation, transacting business in King County, Washington.

6.      This Court has personal jurisdiction over all Defendants.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims arose in this jurisdiction.

8.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) (diversity).  There is diversity of citizenship between AXIS and all Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## II.  **FACTUAL BACKGROUND**

AXIS incorporates and alleges Paragraphs 1 through 8 as though fully set forth herein.

9.      On or about December 10, 2009, Old Republic filed suit against Troy and Diane Kelley, in a case captioned *Old Republic Title, Ltd. v. Troy X. Kelly*, Case No. 09-2-44575-3 SEA, King County Superior Court, Washington.  A copy of Old Republic's Complaint is attached as Exhibit 1 (the Underlying Lawsuit).

10.      In its Underlying Lawsuit, Old Republic alleges it is an escrow service, which works with real estate transactions.  Old Republic alleges that it performed title reconveyance services in Washington State.  Old Republic collected a fee from its escrow customers, and used it to reconvey title to the borrower upon satisfaction of a loan.  At times, Old Republic

1     alleges it would contract with third-party vendors to provide reconveyance services for

2     Washington state customers in transactions involving deeds of trust. Exhibit 1 at ¶¶ 6–7.

3        11.     Old Republic alleges that it contracted with Troy Kelley, doing business as

4     "The Post Closing Department" (PCD), from June 2006 to June 2008. During that time, Old

5     Republic collected reconveyance fees from customers and forwarded the entire amount to

6     PCD. PCD retained a $20.00 service fee and was directed to hold the balance of the fees in

7     trust until the reconveyance was completed. Upon completion, Old Republic alleges that

8     PCD was to refund the unused portion of the fund to the customer. Exhibit 1 at ¶¶ 13, 17,

9     18–20.

10        12.     Old Republic alleges:

11             From time to time, The Post Closing Department refunded
                  unused portions of reconveyance fees to Old Republic Title's

12             customers. However, despite its obligations, The Post Closing
                  Department failed to either refund to Old Republic Title's

13             customers all unused portions of reconveyance fees or failed to
                  return such unused fees to Old Republic Title. Nor did The Post

14             Closing Department refund to Old Republic Title the $20.00
                  Service Fee in those transactions in which The Post Closing

15             Department failed to fulfill its obligations.

16     Exhibit 1 at ¶ 20.

17        13.     Old Republic alleges that on or about June 25, 2008, Kelley advised Old

18     Republic that all of PCD's records were located in a building that had been destroyed.

19     Shortly thereafter, PCD advised Old Republic that it would not be able to continue providing

20     reconveyance services. Old Republic alleges that there are no records of PCD transactions

21     and that PCD claimed that all such records were destroyed in the fire. Exhibit 1 at ¶ 22–23.

22        14.     Old Republic alleges that Kelley formed United National LLC on August 2,

23     2002, and United National 14 LLC on May 11, 2004. Both LLCs were dissolved in August

24     2008. Old Republic alleges that Kelley represented that United National LLC, and not PCD,

25     was the entity that contracted with Old Republic. Old Republic alleges that Troy Kelly has

26     bank accounts in the names of the two LLC entities. Exhibit 1 at ¶¶ 24–27.

15.     As part of its lawsuit against Kelley, Old Republic seeks to pierce the corporate veil of the United National entities to reach the personal and marital assets of Troy Kelley.  Exhibit 1 at ¶ 28.

16.     Old Republic alleges that Kelley breached his obligation to refund fees for unused reconveyance fees or for services not rendered.  Old Republic also alleges Kelley engaged in unfair or deceptive acts or practices toward Old Republic, which impacts the public interest and has "the capacity to injure or deceive a substantial portion of the public." Old Republic alleges that its agreement with PCD was actually with the United National entities, which were alter egos of Kelley.  Old Republic alleges entitlement to pierce the corporate veil of those entities to reach the personal and marital assets of Troy Kelley.  Old Republic further alleges Kelley's failure to properly dissolve the United National entities in August 2008 allows Old Republic to pursue Kelley personally and as his alter egos.  RCW 25.15.300(2).  Old Republic further alleges it is entitled to seek disgorgement and restitution of unlawfully acquired benefits.  Exhibit 1 at ¶¶ 30–53.

### III. **THE INSURANCE POLICY**

17.     AXIS issued Policy No. ECN 631273 to Defendant United National, effective September 15, 2007 to September 15, 2008 (the Policy).  The Policy is subject to its terms, limitations, exclusions, and conditions.  A copy of relevant portions of the Policy is attached as Exhibit 2.  The Policy includes the following provisions:

### PART 3.     **INSURING AGREEMENTS**

#### A.     **What The Company Insures**

The **Company** will pay on the **Insured's** behalf those sums in excess of the **Retention** and within the applicable Limit of Insurance stated in Item 5. On the Declarations Page that any **Insured,** in performing **Insured Services** for others, becomes legally obligated to pay as **Damages** or **Claim Expenses** because of **Claims** as a result of a the following conduct:

1.     A negligent act, error or omission[.]

COMPLAINT FOR DECLARATORY JUDGMENT                Page 4

Bullivant|Houser|Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

. . .

**PART 5.**     **EXCLUSIONS – What the Company Does Not Insure**

     **A.**     The **Company** is not obligated to pay **Damages** or **Claim Expenses** or defend **Claims** for or arising directly or indirectly out of:

     . . .

     6.     Gain, profit or advantage to which any **Insured** is not legally entitled.

     . . .

     **C.**     The **Company** is not obligated to pay **Damages** or **Claim Expenses** or defend **Claims** for the breach of express warranties, guarantees or contracts; provided, however, with respect to allegations of breach of contract this exclusion shall not apply to any liability that would have attached in the absence of such contract.

     . . .

Exhibit 2 at pp. 3, 10, and 11.

    18.     The Policy contains the following relevant definitions:

**PART 4.**     **DEFINITIONS USED IN THIS POLICY**

     . . .

     **C.**     "**Claim**" means a demand or assertion of a legal right seeking **Damages** made against any **Insured.**

     **D.**     "**Claim Expenses**" means expenses incurred by the **Company** or by the **Insured** with the **Company's** consent in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered **Claims,** whether paid by the Company or **Insured** with the **Company's** consent....

     . . .

     **F.**     "**Damages**" means money judgment, award or settlement, including those that are actual, statutory, punitive, multiplied or exemplary, except when applicable law prohibits insurance for punitive, multiplied or exemplary damages; and legal expense or other costs included as part of a judgment, award or settlement.

COMPLAINT FOR DECLARATORY JUDGMENT        Page 5

Bullivant|Houser|Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**Damages** does not include fines, penalties, taxes or disputes over or return of fees, deposits, commissions or charges for goods or services.

. . .

**S.** **"Wrongful Act"** means the conduct or alleged conduct by an **Insured** or any person or organization for whom an **Insured** is legally liable as described in Part 3.A.1.-6.

All **Wrongful Acts** that:

1. Take place between the **Retroactive Date** and the end of the **Policy Period** of the last policy **We** issue to **You,** and

2. Are related by common facts, circumstances, transactions, events and/or decisions;

will be treated as one **Wrongful Act.**

Exhibit 2 at pp. 7, 8, and 10.

19.     Troy and Diane Kelley tendered the defense of the Old Republic lawsuit to AXIS after it was filed in December 2009.  AXIS accepted the tender under a reservation of rights.

## IV.  CAUSE OF ACTION – DECLARATORY RELIEF

20.     AXIS re-alleges and incorporates by reference paragraphs 1–19 of this Complaint as if set forth here in full.

21.     A justiciable controversy exists between AXIS and United National and the Kelleys concerning the coverage provided under the Policy issued to United National.  AXIS contends there is no coverage for the claims alleged against United National and the Kelleys in the Underlying Lawsuit.  United National and the Kelleys contend there is coverage.

22.     Old Republic has an interest in the outcome of this declaratory judgment action and must be parties to this action in order to be bound by the judgment.

23.     AXIS seeks a declaration that it has no obligation to defend or indemnify United National and the Kelleys under the Policy for claims asserted in the Underlying

COMPLAINT FOR DECLARATORY JUDGMENT                Page 6        **Bullivant|Houser|Bailey PC**
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

Lawsuit for the following reasons:

    a.    The *Old Republic* lawsuit does not allege "Damages" as that term is defined in the Policy;

    b.    The *Old Republic* lawsuit does not allege a "Claim" arising from a "Wrongful Act;"

    c.    The policy exclusion for "gain, profit or advantage to which any **Insured** is not legally entitled" excludes coverage for the claims against United National and the Kelleys;

    d.    The policy exclusion for the breach of express warranties, guarantees, or contracts excludes coverage for the claims against United National and the Kelleys.

## V. <u>JURY DEMAND</u>

24.    AXIS demands a trial by jury.

## VI. <u>PRAYER FOR RELIEF</u>

AXIS hereby prays for relief as follows:

1.    The Court issue a declaration that AXIS has no obligation to defend United National and the Kelleys in the Underlying Lawsuit;

2.    The Court issue a declaration that AXIS has no obligation to indemnify United National and the Kelleys for damages claimed in the Underlying Lawsuit because there is no coverage under the Policy.

\\
\\
\\
\\
\\
\\
\\
\\
\\

COMPLAINT FOR DECLARATORY JUDGMENT      Page 7

**Bullivant|Houser|Bailey PC**
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

3.   The Court grant such other and further relief as it deems just and appropriate.

DATED:  May 21, 2010

BULLIVANT HOUSER BAILEY PC


By   /s/ Janis C. Puracal
Douglas G. Houser, OSB #600384
(*Pro hac vice* admission pending)
E-Mail: doug.houser@bullivant.com
Matthew J. Sekits, WSBA #26175
E-Mail: matthew.sekits@bullivant.com
Janis C. Puracal, WSBA #39234
E-Mail: janis.puracal@bullivant.com

Attorneys for Plaintiff AXIS Surplus Insurance
Company

12541930.1

COMPLAINT FOR DECLARATORY JUDGMENT

Bullivant|Houser|Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089
Telephone: 503.228.6351

# EXHIBIT 1

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| OLD REPUBLIC TITLE, LTD., | NO.   09-2-44575-3 SEA |
| Plaintiff, | **COMPLAINT** |
| v. | |
| TROY X. KELLEY and DIANE DUFFRIN KELLEY, individually and as a marital community, | |
| Defendants. | |

Plaintiff Old Republic Title, Ltd. ("Old Republic Title") alleges for its

Complaint as follows:

## I. PARTIES

1.      Old Republic Title is a Delaware corporation.  At all times relevant to

the allegations herein, Old Republic Title conducted business in King County,

Washington.

2.      Defendants Troy X. Kelley and Diane Duffrin Kelley are a married

couple who reside in Pierce County, Washington.  At times relevant to this lawsuit,

Troy X. Kelley (hereinafter "Kelley") was doing business in King County and

elsewhere as "The Post Closing Department."  All relevant acts and omissions of

COMPLAINT - 1

4842-3324-6212.07
121009/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1  Troy X. Kelley described herein were carried out on behalf of his marital

2  community, and the obligations described herein are the community and separate

3  obligations of Troy X. Kelley and Diane Duffrin Kelley.

## II.  JURISDICTION AND VENUE

5        3.      This court has jurisdiction and venue is proper in King County

6  Superior Court pursuant to RCW 4.12.025.

## III.  FACTUAL ALLEGATIONS

8        4.      Among other lines of business, Old Republic Title provides escrow

9  services for residential real estate transactions in Washington, including gathering

10  and preparing documents, preparing settlement statements, collecting and

11  disbursing loan funds and sale proceeds, and recording documents.

12        5.      In Washington State, home buyers or owners who are refinancing

13  typically grant deeds of trust to their lenders, which are used to secure purchase

14  loans, refinance loans, or home equity lines of credit.  By signing a deed of trust,

15  the grantor/borrower "conveys" the property to the trustee to hold it in trust for the

16  lender/beneficiary to secure payment of a loan.  When the underlying loan is paid

17  in full, such as through the sale of the property or the refinancing and payoff of a

18  loan, the trustee transfers title back to the borrower.  That process is called a

19  "reconveyance."

20        6.      Depending on the parties' escrow instructions, Old Republic Title

21  often undertook to perform various reconveyance services in Washington State

22  real estate transactions involving deeds of trust.  Old Republic collected a

23  reconveyance fee from escrow customers who retained and instructed Old

24  Republic Title to perform such services.

25

26

COMPLAINT - 2

4842-3324-6212.07
121009/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

Complaint Page 11

7.    From time to time, Old Republic Title contracted with third-party vendors to provide reconveyance services for its Washington State customers in such transactions involving deeds of trust.

### The Post Closing Department

8.    Prior to 2006, Defendant Troy X. Kelley solicited Old Republic Title to hire his business, "The Post Closing Department," as a vendor to perform reconveyance services for Washington State transactions in King County and elsewhere in Washington involving reconveyances in which Old Republic Title acted as the escrow agent.

9.    Kelley represented to Old Republic Title that "The Post Closing Department" was a legal entity doing business in Washington.

10.    Kelley represented to Old Republic Title that, if hired, "The Post Closing Department" would:

    a.  properly and fully perform such services;

    b.  hold in trust and protect against loss any reconveyance fees collected by Old Republic Title from its customers and transferred to The Post Closing Department; and

    c.  refund any excess reconveyance fees to the escrow customers upon completion of its services.

11.    Kelley made the representations in the two preceding paragraphs both verbally and in writing.

12.    "The Post Closing Department" was never a Washington corporation.

COMPLAINT - 3

4842-3324-6212.07
121009/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

13.     Old Republic Title executed a contract effective June 1, 2006 ("PCD Agreement") in reliance on Kelley's representations. Exhibit A is a true and correct copy of the PCD Agreement.

14.     Kelley signed the PCD Agreement as President of The Post Closing Department.

15.     The PCD Agreement identified the business as being located at 2521 Fremont Street, Tacoma, Washington 98406. That address was and still is the home address of Defendants Kelley.

16.     Troy X. Kelley d/b/a "The Post Closing Department" (hereafter "The Post Closing Department") agreed, among other things, in the PCD Agreement and elsewhere, to

       a.  receive, track, and complete reconveyances for transactions in Washington where Old Republic Title acted as the escrow agent;

       b.  to hold in trust and protect against loss any amounts collected by Old Republic Title from customers as reconveyance fees and transferred to The Post Closing Department;

       c.  to refund unused portions of such reconveyance fees; and to provide certain information to Old Republic Title, including information regarding refunds to principals.

17.     Old Republic Title used The Post Closing Department for reconveyance services for transactions in Washington from June 1, 2006, through June 2008. During that time, Old Republic Title collected a reconveyance fee at closing from its escrow customers whose transactions involved deeds of trust requiring reconveyance. Old Republic Title forwarded the entire amount of the reconveyance fee to The Post Closing Department by way of checks made payable to "PCD," "Post Closing Department," or "The Post Closing Department."

COMPLAINT - 4

4842-3324-6212.07
121009/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

18.     From the reconveyance fee collected and transmitted to The Post Closing Department, The Post Closing Department was paid a $20.00 Service Fee for each reconveyance involved in the escrow transaction.  The Post Closing Department was obligated to hold the remaining balance in trust for completion of the reconveyance and use it to pay any necessary costs incurred, such as a trustee fee or a fee to record the reconveyance document.

19.     If, upon confirmation of a completed reconveyance, any such funds held in trust by The Post Closing Department had not been used, The Post Closing Department was obligated to refund the remaining balance to the Old Republic Title customer from whom the reconveyance fee had been collected by Old Republic Title at closing.

20.     From time to time, The Post Closing Department refunded unused portions of reconveyance fees to Old Republic Title's customers.  However, despite its obligations, The Post Closing Department failed to either refund to Old Republic Title's customers all unused portions of reconveyance fees or failed to return such unused fees to Old Republic Title.. Nor did The Post Closing Department refund to Old Republic Title the $20.00 Service Fee in those transactions in which The Post Closing Department failed to fulfill its obligations.

21.     Old Republic Title has also incurred legal fees and other costs as a consequence of The Post Closing Department's failure to fulfill its obligations.

22.     On or about June 25, 2008, a fire burned down the Stewart Title building in Everett, Washington.  Shortly thereafter, Old Republic Title spoke with Kelley.  Notwithstanding prior correspondence and documents identifying The Post Closing Department's business as being located in Tacoma, Kelley told Old Republic Title that all of The Post Closing Department's records and operations had been located in the Stewart Title building in Everett.  Kelley told Old Republic

COMPLAINT - 5
4842-3324-6212.07
121009/62131.00047

Riddell Williams p.s.
1001 FOURTH AVENUE
SUITE 4600
SEATTLE, WA 98154-1192
206.624.3600

1   Title that he was out of the country and had been at the time of the fire, and

2   therefore had not been able to inspect the alleged loss, but that he understood all

3   of The Post Closing Department's records related to its work for Old Republic Title

4   had been destroyed in the Stewart Title building fire.

5       23.   Shortly thereafter, Kelley told Old Republic Title that The Post

6   Closing Department would be unable to continue to provide reconveyance

7   services to Old Republic Title because of the fire.  Despite requests that he do so,

8   Kelley has not provided any electronic or hard copy records related to The Post

9   Closing Department's work for Old Republic Title or any accounting with respect to

10   its use, retention, and/or refund of reconveyance fees, claiming all such

11   information was destroyed in the fire.

12   **United National LLC and United National 14 LLC**

13       24.   Kelley formed United National LLC, a Washington limited liability

14   company, on August 2, 2002.  Troy Kelley was United National LLC's registered

15   agent and its sole member.  United National LLC was dissolved on August 12,

16   2008.

17       25.   Kelley formed United National 14 LLC, a Washington limited liability

18   company, on May 11, 2004.  Kelley was United National LLC's registered agent,

19   its manager, and, on information and belief, its sole member.  United National 14

20   LLC was dissolved on August 12, 2008.

21       26.   At times, Kelley has taken the position that United National LLC, and

22   not Kelley himself, was doing business as "The Post Closing Department" at all

23   times during its work with Old Republic Title and that United National LLC was the

24   party that entered the PCD Agreement and that had agreed to provide

25   reconveyance services and make refunds.

26

COMPLAINT - 6

4842-3324-6212.07
121009/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

27.    On information and belief, Kelley used bank accounts held in the name of United National LLC or United National 14 LLC for the deposit and withdrawal of reconveyance fees received from Old Republic Title.

28.    To the extent that Kelley takes the position that United National LLC or United National 14 LLC were the persons or entities obligated to provide reconveyance services to Old Republic Title and make refunds of unused amounts to its customers, whether under the PCD Agreement or otherwise, that position is inconsistent with the PCD Agreement, the parties' course of dealing, Old Republic Title's intent, and equity.  Accordingly, to the extent that Kelley attempts to use a corporate veil to shield himself from personal liability, that veil should be pierced and liability should be imposed against Troy X. Kelley personally as well as against his marital community.

29.    In the alternative, to the extent that one or both of United National LLC or United National 14 LLC were the persons or entities obligated to provide reconveyance services to Old Republic Title and to make refunds of unused amounts, they breached their obligations to do so.

### IV.  FIRST CAUSE OF ACTION:  BREACH OF CONTRACT

30.    Old Republic Title reincorporates the allegations in Paragraphs 1-29 as if fully set forth herein.

31.    A valid agreement regarding the provision of various services existed between Old Republic Title and Troy X. Kelley d/b/a The Post Closing Department, as memorialized in the PCD Agreement and in other oral and written statements made at or around the time the PCD Agreement was executed, as alleged above.

32.    Old Republic Title performed its obligations under that agreement.

COMPLAINT - 7

4842-3324-6212.07
121009/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

33.     Kelley materially breached that agreement by, among other things, failing to fulfill his obligation to refund all unused portions of reconveyance fees. Kelley has not returned those amounts to Old Republic Title or its customers and has not refunded to Old Republic Title any fees paid to him for services that Kelley failed to properly and fully perform.

34.     Old Republic Title suffered damages as a consequence of Kelley's breaches of that agreement in an amount to be proven at trial.

## V. SECOND CAUSE OF ACTION: VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT, RCW CH. 19.86

35.     Old Republic Title reincorporates the allegations in Paragraphs 1-34 as if fully set forth herein.

36.     As alleged above, Kelley engaged in unfair or deceptive acts or practices toward Old Republic Title, which acts occurred in the conduct of trade or commerce.

37.     Kelley's unfair or deceptive acts or practices toward Old Republic Title impacted the public interest and have the capacity to injure or deceive a substantial portion of the public.

38.     Kelley's unfair or deceptive acts or practices toward Old Republic Title directly and proximately caused injury to Old Republic Title in its business in an amount to be proven at trial.

## VI. THIRD CAUSE OF ACTION:  PIERCING THE CORPORATE VEIL

39.     Old Republic Title reincorporates the allegations in Paragraphs 1-38 as if fully set forth herein.

40.     To the extent that Kelley establishes that Old Republic Title's agreement with The Post Closing Department to provide reconveyance services and make refunds to Old Republic Title's customers was actually with United

COMPLAINT - 8
4842-3324-6212.07
121009/82131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1  National LLC or United National 14 LLC, Old Republic Title alleges that during all

2  times relevant to this matter, United National LLC and United National 14 LLC

3  were the alter egos of Kelley, particularly with respect to those reconveyance

4  services and refunds at issue in this matter that create liability.

5      41.    Kelley, United National LLC, and United National 14 LLC operated a

6  common enterprise and operated through one location with a common set of

7  employees and equipment.

8      42.    Kelley failed to maintain United National LLC and United National 14

9  LLC as separate entities and used them in avoiding and violating duties owed to

10 Old Republic Title.  Kelley also left United National LLC and United National 14

11 LLC without sufficient funds in order to avoid liability.

12     43.    Disregarding the corporate veil is necessary and required to prevent

13 an unjustified loss to Old Republic Title.

14     44.    The Court should allow Old Republic Title to "pierce the corporate

15 veil" and hold Troy X. Kelley and his marital community personally liable on all

16 claims asserted herein, including but not limited to holding him personally

17 responsible for all refunds owed in transactions referred to The Post Closing

18 Department for reconveyance services where such refunds were not made and for

19 Old Republic Title's other damages.

20 **VII. FOURTH CAUSE OF ACTION:  LIABILITY FOR IMPROPER WINDING UP**

21     45.    Old Republic Title reincorporates the allegations in Paragraphs 1-44

22 as if fully set forth herein.

23     46.    Kelley dissolved or caused to be dissolved United National LLC and

24 United National 14 LLC on or about August 12, 2008.

25

26

COMPLAINT - 9
4842-3324-6212.07
121009/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

47.   To the extent that Kelley establishes that Old Republic Title's contract with The Post Closing Department to provide reconveyance services and make refunds of unused reconveyance fees was actually with United National LLC or United National 14 LLC, then in winding up those companies Kelley failed to pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional, or unmatured claims and obligations, to Old Republic Title and to its customers whose reconveyances were to be handled by The Post Closing Department for reconveyance services, all of which were known to United National LLC and United National 14 LLC at the time of dissolution, all in violation of RCW 25.15.300(2).

48.   As a result, Troy X. Kelley (and his marital community) is personally liable, in an amount to be proven at trial, for any obligations of United National LLC or United National 14 LLC with respect to the actions or inactions alleged herein, including but not limited to responsibility for all refunds owed to Old Republic Title's customers in transactions referred to The Post Closing Department for reconveyance services where such refunds were not made and for Old Republic Title's other damages.

## VIII.  UNJUST ENRICHMENT

49.   Old Republic Title reincorporates the allegations in Paragraphs 1-48 as if fully set forth herein.

50.   As a result of the foregoing actions and failures to act, Defendants Kelley received benefits in the form of unused reconveyance fees that Kelley did not refund as he was obligated.

51.   Defendants were aware of the receipt of such benefits.

COMPLAINT - 10
4842-3324-6212.07
121009/62131.00047

Riddell Williams p.s.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

52.   Defendants received and continue to retain such benefits to the detriment of Old Republic Title.  It would be inequitable to allow Defendants to retain such benefits.

53.   As a result of Defendants' unjust enrichment, Old Republic Title has sustained damages in an amount to be proven at trial and seeks full disgorgement and restitution of Defendants' enrichment and benefits acquired as a result of the actions or inactions alleged above.

## IX.  REQUEST FOR RELIEF

Old Republic Title requests judgment against Defendants Troy X. Kelley and Diane Duffrin Kelley, individually and against their marital community, as follows:

1.   For money damages in an amount to be proven at trial on all claims asserted in this Complaint;

2.   For treble damages and attorney fees and costs under the Consumer Protection Act;

3.   For an order piercing the corporate veil of United National LLC and United National 14 LLC and imposing personal liability on Defendants for the claims asserted in this Complaint;

4.   For an order under RCW 25.15.300(2) imposing personal liability on Troy X. Kelley for any actions or inactions of United National LLC and United National 14 LLC that proximately caused damage to Old Republic Title or its customers, or gave rise to the claims asserted herein;

5.   For an accounting of Kelley's handling and use of any reconveyance fee amounts forwarded to "The Post Closing Department" by Old Republic Title,

COMPLAINT - 11

4842-3324-6212.07
121009/62131.00047

Riddell Williams p.s.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   including but not limited to any expenses paid with or refunds made of those

2   amounts;

3       6.    Restitution of all reconveyance fee amounts, including the service

4   fee, forwarded to "The Post Closing Department" and imposition of a constructive

5   trust over such amounts for the benefit of Old Republic Title and its customers;

6       7.    For an award of pre- and post-judgment interest;

7       8.    For an award of attorney fees and costs of suit; and

8       9.    For such other relief as may be appropriate, just and equitable.

9       DATED this 10th day of December, 2009.

10

11                   RIDDELL WILLIAMS P.S.

12

13                   By  _Scott A. Smith_____

14                       Scott A. Smith, WSBA No. 11975
                    Gavin W. Skok, WSBA No. 29766

15                       Attorneys for Plaintiff Old Republic Title,
                    Ltd.

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 12

4842-3324-6212.07
121009/62131.00047

Riddell Williams p.s.
1001 FOURTH AVENUE
SUITE 4600
SEATTLE, WA 98154-1192
206.624.3600



# THE POST CLOSING DEPARTMENT
## AGREEMENT FOR POST CLOSING SERVICES

Client: Old Republic Title, Ltd. dba Old Republic Title and Escrow, Ltd. and Issaquah Escrow, Inc.

**Description of Services:**

**The Post Closing Department (hereinafter known as PCD)**

The PCD agrees to receive, track, prepare and obtain all reconveyances and satisfaction of mortgages from client's closed escrow and title files. PCD will follow-up in writing and on the telephone with outside trustees that have not recorded reconveyances within the time period mandated by state statutes. PCD agrees to assist client with all their post closing needs.

Client may begin to forward all "post closing documents" and phone calls concerning post closing to the post-closing desk/department. PCD will review all post closing documents for accuracy and correctness. If documents are incomplete or incorrect, PCD will correct and/or complete the document(s) within the parameters specified by client. "Post closing documents" shall mean by way of example but not limitation deed of full and partial reconveyances, releases of mortgages and instructions and/or transmittals executed by principals directing PCD to obtain such reconveyances and releases.

PCD shall complete all documents in a timely manner and in accordance with state statutes. And with the client's best interest in mind, PCD will always try to prepare and execute a substitution of trustee when said client is not listed as trustee on original recorded Deed of Trust. PCD shall also work diligently with lenders and trustees to facilitate the timely completion of reconveyances. PCD shall comply with all state statues concerning post-closing material. PCD under no circumstances shall be required to bring legal action against any parties of interest.

**Previous Services: Follow-up**

If client has had a previous reconveyance service or outside vendor offering post-closing services, PCD shall audit previous years tracking and processing. If in the event PCD recovers money owed to client, client agrees to pay PCD 10% of recovered funds.

**Optional:** Initial here for service_____

**PCD Privacy Notice**

PCD agrees that it shall not collect, disseminate or release any information derived from client's escrow files and/or provided to its company or its employees to any third party or use said information for any marketing or other purpose unless in direct relationship to providing client with a completed reconveyance. PCD shall hold all information obtained from client in the strictest confidentiality and agrees to shred any documents collected or received from client's escrow files within one year of the completion of the reconveyances related to such files.


EXHIBIT _A_

Start Date:  June 1, 2006

Fees are as follows:

$20.00 post closing tracking fee per item,
        fee includes management of funds due trustees & client refunds

$5.00 reconveyance preparation (trustee only) where Old Republic Title instructs PCD to prepare trustee
file where Old Republic Title is trustee     Initial here for service_____

Payment Terms:

Client shall collect post-closing fee at closing and forward check to PCD.  PCD will provide client with a
monthly report of services.

This agreement shall be in effect for six months and shall renew automatically.  Client can however,
with 30 days written notice, discontinue agreement at anytime. Upon the effective cancellation date,
PCD will cease to receive reconveyance packages from client but will retain all files received up to
cancellation date and will continue to provide full service on such files until it is determined that all
reconveyances have been completed. If after discontinuing service client would like assistance from
The Post Closing Department to continue the tracking and processing methods and procedures put
in place by The Post Closing Department, client may request consultation.

Additional Terms and Conditions:  __

- PCD shall provide client with monthly progress reports of reconveyance activity on each of
  client's files being tracked as well as an accounting on all funds received from client that have
  been disbursed and/or refunded to principals.

Old Republic Title, Ltd.

By: _____      ____5/8/06____
        Carleton R. Lago                             Date
        Senior Vice President and Secretary
        2001 North Main Street, Suite 500
        Walnut Creek, CA 94596
        Phone: 800-325-7711
        Fax:  925-938-0404

The Post Closing Department

By: _____      ____5-4-06____
        Troy X. Kelley                               Date
        President
        2521 Fremont Street
        Tacoma, WA 98406
        Phone: 888-210-2607 / Fax: 888-210-2613
        Email: tkelley@propertyclose.com

# EXHIBIT 2

**AXIS Surplus Insurance Company**
303 W. Madison, Suite 500, Chicago, Illinois  60606
(866) 259-5435



# Miscellaneous

# Professional Liability

# Insurance Policy

### CLAIMS MADE

THIS POLICY INCLUDES THIS FRONT PAGE AND THE FOLLOWING PARTS:

PART 1.   Declarations Page

PART 2.   Policy Provision Index

PART 3.   Insuring Agreements

PART 4.   Definitions Used in This Policy

PART 5.   Exclusions

PART 6.   General Conditions

PART 7.   Endorsements (when required)

ALL OF THESE PARTS MUST BE INCLUDED TO MAKE A COMPLETE POLICY.

Notices to the Insurance Company should be made c/o:

Media/Professional Insurance
a business unit of the Select Markets Division of AXIS Insurance
Two Pershing Square, Suite 800
2300 Main Street
Kansas City, Missouri  64108-2404
Telephone:    (816) 471-6118
Facsimile:    (816) 471-6119

MLEO 1000 (10/06)

## AXIS Surplus Insurance Company
303 W. Madison, Suite 500, Chicago, Illinois 60606
(866) 259-5435
(herein called "the **Company**")

## Miscellaneous Professional Liability Insurance Policy

### Claims Made

## PART 1.   DECLARATIONS PAGE

> THIS IS A CLAIMS MADE POLICY. **CLAIM EXPENSES** ARE INCLUDED IN THE LIMIT OF INSURANCE. PLEASE READ THE ENTIRE POLICY CAREFULLY.

Policy No. __ECN 631273__        Renewal of No. __ECN 626511__

IN RETURN FOR THE PAYMENT OF THE PREMIUM, THE **COMPANY** AGREES WITH THE **INSURED** TO PROVIDE INSURANCE UNDER THE PROVISIONS IN THIS POLICY.

Item 1.   **Named Insured** and
Mailing Address:
    United National, LLC
    DBA Post Closing Department
    2521 Fremont Street
    Tacoma, Washington   98406

*I HEREBY CERTIFY THAT THIS IS A TRUE AND ACCURATE COPY OF POLICY # ECN 631273*
*Peggy Simons        3/3/2010*

Item 2.   **Policy Period:**   From __September 15, 2007__   To __September 15, 2008__
                         Inception Date          Expiration Date
                         12:01 A.M., Standard Time at the Mailing Address stated in Item 1.

Item 3.   **Retroactive Date:** __September 15, 2004__   IF NO DATE IS STATED HERE, COVERAGE DOES NOT APPLY TO **WRONGFUL ACTS** COMMITTED PRIOR TO THE INCEPTION DATE STATED IN ITEM 2. ABOVE.

Item 4.   Schedule of **Insured Services:**
    Reconveyance tracking, title policy tracking and title processing for others.

UNDERWRITING COPY

Copyright 2006
Complaint Page 26

## PART 1.   DECLARATIONS PAGE (Continued)

**Named Insured**   :   United National, LLC

Policy No.   :   ECN 631273

Item 5.   Limit of Insurance:   a.   $   1,000,000   Each **Wrongful Act**

   b.   $   1,000,000   Total Limit of Insurance

Item 6.   **Retention:**   $   10,000   Each **Wrongful Act**

Item 7.   Premium:   $   3,951.00

State Surcharge/Tax:   $   Not Applicable

Policy Fee:   $
Surplus Lines Tax:   $
Stamping Fee:   $
Policy Total:   $

Item 8.   Form(s) and Endorsement(s) made a part of this policy at time of issue:
Miscellaneous Professional Liability Insurance - MLEO 1001 (10-06)
1. Service of Suit - Form ML-44GE
2. Title Insurance, Title Abstractors Change Endorsement - Form ML-91 (5-07)
3. Extended Reporting Period Option Endorsement - Form ML-112

THIS DECLARATIONS PAGE, ALONG WITH THE **INSURED'S** SIGNED **APPLICATION OR RENEWAL APPLICATION** AND ALL OF THE PARTS OF THE POLICY LISTED IN ITEM 8. ABOVE COMPLETE THE POLICY.

Countersigned at <u>Kansas City, Missouri</u>   By _Mary J Schust_
Authorized Representative

Date   <u>October 11, 2007</u>   <u>Media/Professional Insurance</u>
Agency Producer

MLEO 1000 (10/06)   PAGE 3 OF 3

Copyright 2006   Complaint Page 27   UNDERWRITING COPY

# AXIS® PRO MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE POLICY

### CLAIMS MADE

### IMPORTANT NOTICE

**CLAIM EXPENSE** IS INCLUDED IN THE LIMIT OF INSURANCE AND THE **RETENTION**.

ALL WORDS OR PHRASES, OTHER THAN CAPTIONS, PRINTED IN BOLD FACE ARE DEFINED IN THE POLICY. VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT INSURED.

**CLAIMS MADE POLICY:** THIS INSURANCE COVERAGE IS ON A CLAIMS MADE BASIS. COVERAGE APPLIES ONLY TO THOSE **CLAIMS** THAT ARE FIRST MADE DURING THE **POLICY PERIOD** AND ANY EXTENDED REPORTING PERIOD, IF APPLICABLE, AS THOSE TERMS ARE DESCRIBED IN THE POLICY. COVERAGE DOES NOT APPLY TO ANY **WRONGFUL ACTS** COMMITTED BEFORE THE **RETROACTIVE DATE** STATED ON THE DECLARATIONS PAGE.

In consideration of the payment of the premium and in reliance on the statements in the **Application** and subject to all other terms of this policy, the **Company** designated in the Declarations agrees with the **Insured** to the following:

**PART 2.   POLICY PROVISION INDEX**

| | | Page |
|---|---|---|
| PART 1. | DECLARATIONS PAGE | |
| PART 2. | THIS SECTION – POLICY PROVISION INDEX | 2-3 |
| PART 3. | INSURING AGREEMENTS | |
| | A.   What the **Company** Insures | 3 |
| | B.   Defense of a **Claim** | 3-4 |
| | C.   Spousal Coverage | 4 |
| | D.   Where and When the **Company** Insures | 4-6 |
| |     1. Where the **Company** Insures | 4 |
| |     2. When the **Company** Insures | 4-6 |
| |        a. **Claims** First Made | 4 |
| |        b. Prior **Wrongful Acts** | 4-5 |
| |        c. Reported **Wrongful Acts** | 5 |
| |        d. Extended Reporting Period | 5-6 |
| |        e. Multiple **Claims** | 6 |
| | E.   Limit of Insurance, **Retention** and Reimbursement | 6-7 |
| |     1. Limit of Insurance | 6-7 |
| |        a. Each **Wrongful Act** | 6 |
| |        b. Total Limit of Insurance | 7 |
| |     2. **Retention** | 7 |
| |     3. Reimbursement | 7 |
| PART 4. | DEFINITIONS USED IN THIS POLICY | |
| | A.   **Application or Renewal Application** | 7 |
| | B.   **Bodily Injury** | 7 |
| | C.   **Claim** | 7 |
| | D.   **Claim Expenses** | 7-8 |
| | E.   **Company** | 8 |
| | F.   **Damages** | 8 |
| | G.   **First Inception Date** | 8 |
| | H.   **First Named Insured** | 8 |
| | I.   **Individual Insured** | 8-9 |
| | J.   **Insured** | 9 |
| | K.   **Insured Services** | 9 |
| | L.   **Named Insured** | 9 |
| | M.   **Policy Period** | 9 |
| | N.   **Pollutant** | 9 |
| | O.   **Property Damage** | 9 |
| | P.   **Retention** | 9 |
| | Q.   **Retroactive Date** | 9 |
| | R.   **Subsidiary(ies)** | 9-10 |
| | S.   **Wrongful Act** | 10 |
| PART 5. | EXCLUSIONS – What the **Company** Does Not Insure | 10-11 |

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

PART 6.   GENERAL CONDITIONS
    A.   Special Rights and Duties of the **First Named Insured**   11
    B.   What to do if an **Insured** has a **Claim** or Suit   12
    C.   Legal Action Against the **Company**   12
    D.   Bankruptcy   12
    E.   Other Insurance   12
    F.   Transfer of Rights of Recovery Against Others to the **Company**   13
    G.   Changes in Policy Provisions; Changes in the **Insured's** Operations   13
    H.   Transfer of the **Insured's** Rights and Duties Under the Policy   13
    I.   Cancellation   13
    J.   Nonrenewal   14
    K.   Representations   14
    L.   Severability   14

PART 7.   ENDORSEMENTS   15

## PART 3.  INSURING AGREEMENTS

### A.  What The Company Insures

The **Company** will pay on the **Insured's** behalf those sums in excess of the **Retention** and within the applicable Limit of Insurance stated in Item 5. on the Declarations Page that any **Insured**, in performing **Insured Services** for others, becomes legally obligated to pay as **Damages** or **Claim Expenses** because of **Claims** as a result of the following conduct:

1.  A negligent act, error or omission;

2.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

3.  Oral or written publication of material that violates a person's right to privacy;

4.  False arrest, detention or imprisonment;

5.  Wrongful entry into or eviction of a person from a room, dwelling or premises that the person occupies; or

6.  Malicious prosecution.

### B.  Defense of a Claim

The **Company** will have the right and duty to appoint an attorney and defend a covered **Claim**, even if the allegations are groundless, false or fraudulent. But:

1.  The **Company** may, at the **Company's** discretion, investigate and settle a covered **Claim**.

2.  No offer to settle any **Claim** will be made or accepted by the **Insured** without prior written agreement by the **Company**. Notwithstanding the foregoing, it is understood that the **Insured** may settle any **Claim** for which the total cost of **Damages** and **Claim Expenses** associated therewith is less than the amount of the remaining **Retention**.

3.  If the **Company** is willing to accept the judgment of the trial or appellate court or any negotiated settlement or settlement offer and the **Insured** is not willing to accept such judgment or settlement, the **Company's** liability for any **Claim Expenses** and/or **Damages** incurred after the **Company** indicated its willingness to accept such judgment or settlement, shall be limited to the amount for which the **Company** could have resolved the **Claim** plus an additional fifty (50) percent of that amount. Nothing in this provision will cause the **Company's** liability to exceed the applicable Limits of Insurance set forth on the Declarations Page.

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

4. All **Claim Expenses** incurred and **Damages** awarded prior to the judgment or settlement offer that triggers Part 3.B.3. above, will be paid in accordance with all other applicable policy provisions and the coverage granted therein.

5. The **Company's** right and duty to defend and pay on the **Insured's** behalf ends when the **Company** has used up the applicable Limit of Insurance in payment of **Damages** or **Claim Expenses**, except where specifically noted otherwise in this policy.

6. Nothing in this Part 3.B. will relieve the **Insured** from any notice or cooperation requirements contained in Part 6.B.1. or within any other part of this policy.

C. **Spousal Coverage**

If a **Claim** made against an **Individual Insured** includes a **Claim** against that **Individual Insured's** lawful spouse solely by reason of:

1. Such spouse's status as the **Individual Insured's** spouse, or

2. Such spouse's ownership interest in property from which the claimant seeks recovery for the **Individual Insured's Wrongful Acts**,

all loss which such spouse becomes legally obligated to pay on account of such **Claim** shall be treated for purposes of this policy as loss which the **Individual Insured** is legally obligated to pay on account of the **Claim** made against the **Individual Insured**. Such loss shall be covered under this policy only if and to the extent that such loss would be covered under this policy if incurred by the **Individual Insured**. The coverage extension afforded by this subsection does not apply to any **Claim** alleging any **Wrongful Act** or omission by the **Individual Insured's** spouse. The term "spouse" as used in this paragraph shall include any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law in the United States of America.

D. **Where and When The Company Insures**

1. **Where The Company Insures**

The territory and jurisdiction of this policy is universal. Coverage applies to **Wrongful Acts** committed anywhere and to **Claims** made in any jurisdiction in the world. If **Damages** or **Claim Expenses** are paid in a currency other than United States of America dollars, then the payment under this policy will be considered to have been made in United States dollars at the conversion rate which is in effect at the time of the payment.

2. **When The Company Insures**

a. **Claims** First Made

This insurance applies when a written **Claim** is first made against any **Insured** during the **Policy Period**. To be covered, the **Claim** must also arise from a **Wrongful Act** committed during the **Policy Period**.

The **Company** will consider a **Claim** to be first made against an **Insured** when a written **Claim** is first received by any **Insured**.

This insurance also applies to **Claims** under the following conditions:

b. Prior **Wrongful Acts**

This policy will apply to a written **Claim** first made against any **Insured** arising from a **Wrongful Act** committed between the **Retroactive Date** and the Inception Date of the policy, but only if all of the following conditions are met:

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

(1) The written **Claim** is first made against any **Insured** during the **Policy Period**. The **Company** will consider a **Claim** to be first made against the **Insured** when a written **Claim** is received by any **Insured**;

(2) No **Insured** knew, prior to the **First Inception Date** of the **Insured's** policy with the **Company**, of a circumstance that could reasonably be expected to lead to the **Claim**; and

(3) There is no other valid and collectible insurance for the **Claim**.

c.  Reported **Wrongful Acts**

This policy will apply to a written **Claim** first made against any **Insured** after the end of the **Policy Period**, but only if all of the following conditions are met:

(1) The **Wrongful Act** giving rise to the **Claim** is committed between the **Retroactive Date** and the end of the **Policy Period**;

(2) The **Company** receives written notice from the **Insured** during the **Policy Period** of the **Wrongful Act**. The notice must include all of the following information:

(a)  The names of those persons or organizations involved in the **Wrongful Act**;

(b)  The specific person or organization likely to make the **Claim**;

(c)  A description of the time, place and nature of the **Wrongful Act**; and

(d)  A description of the potential **Damages**;

(3) No **Insured** knew prior to the **First Inception Date** of a **Wrongful Act**, alleged **Wrongful Act** or circumstance that could reasonably be expected to lead to the **Claim**; and

(4) There is no other valid and collectible insurance for the **Claim**.

The provisions of the policy in effect on the date the **Company** receives the notice of the **Wrongful Act** will apply to a **Claim** first made after the end of the **Policy Period** and arising from a reported **Wrongful Act**.

d.  Extended Reporting Period

This section describes the provisions and conditions that apply to **Claims** first made after the end of the **Policy Period** when the **Insured** had not reported a **Wrongful Act** during the **Policy Period** in accordance with Part 3.D.2.c. above. Such **Claims** are not automatically covered. To cover them, the **First Named Insured** must purchase an Extended Reporting Period from the **Company**.

If the **First Named Insured** purchases an Extended Reporting Period, the **Company** will cover a **Claim** first made against any **Insured** during the Extended Reporting Period, but only if all of the following conditions are met:

(1) The **Wrongful Act** is committed between the **Retroactive Date** and the end of the **Policy Period**;

(2) No **Insured** knew prior to the **First Inception Date** of a circumstance that could reasonably be expected to lead to the **Claim**; and

(3) There is no other valid or collectible insurance for the **Claim**.

The **Company** will consider a **Claim** to be made during the Extended Reporting Period only if written **Claim** is first received by any **Insured** after the Expiration Date of the **Policy Period** and prior to the Expiration Date stated in the Extended Reporting Period Endorsement.

MLEO 1001 (10-06)

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc. All Rights Reserved.

The following provisions and conditions also apply to the Extended Reporting Period:

(4) If the **Company** or the **First Named Insured** cancels or nonrenews the policy, and upon request by the **First Named Insured**, the **Company** will sell one of the Extended Reporting Period options listed on the Extended Reporting Period Option Endorsement, unless the **Company** cancels or nonrenews the policy because:

(a) Any **Insured** failed to pay the premium or **Retention**; or

(b) Any **Insured** failed to comply with policy provisions.

Changes or proposed changes in premium or policy provisions shall not be construed as cancellation or nonrenewal of the policy by the **Company**.

(5) The **Company** must receive the **First Named Insured's** request for the Extended Reporting Period in writing within 30 days after the end of the **Policy Period**. On receipt and acceptance of the request, the **Company** will issue an endorsement showing the Extended Reporting Period in accordance with the option requested by the **First Named Insured**. At the same time, the **Company** will bill the additional premium, and the **Company** must receive payment within 30 days after the billing date for the endorsement to be effective.

(6) The endorsement shall also include the provisions and conditions applicable to the Extended Reporting Period. Once in effect, the Extended Reporting Period may not be canceled.

(7) A **Claim** that is first made during the Extended Reporting Period will be deemed to have been made on the last day of the **Policy Period**. The provisions of the policy in effect on the last day of the **Policy Period** will apply.

(8) The Extended Reporting Period does not reinstate or increase the Limit of Insurance.

(9) The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided.

e. Multiple **Claims**

All **Claims** arising from the same **Wrongful Act** will be deemed to have been made on the earlier of the following times:

(1) The date the first of those **Claims** is made against any **Insured**; or

(2) The first date the **Company** receives the **Insured's** written notice of the **Wrongful Act**.

The provisions of the policy in effect on that date will apply.

**E. Limit of Insurance, Retention and Reimbursement**

1. **Limit of Insurance**

a. Each **Wrongful Act**

The Each **Wrongful Act** Limit of Insurance stated in Item 5.a. on the Declarations Page is the most the **Company** will pay for Damages and **Claim Expenses** combined for the total of all **Claims** made during the **Policy Period** and any Extended Reporting Period arising from one **Wrongful Act**, no matter how many:

(1) **Insureds** this policy covers;

(2) **Claims** are made; or

(3) Persons or organizations make **Claims**.

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc. All Rights Reserved.

b.  Total Limit of Insurance

The Total Limit of Insurance stated in Item 5.b. on the Declarations Page is the most the **Company** will pay for **Damages** and **Claim Expenses** combined for the total of all **Claims** made during the **Policy Period** and any Extended Reporting Period, no matter how many:

(1)  **Insureds** this policy covers;

(2)  **Claims** are made;

(3)  Persons or organizations make **Claims**; or

(4)  **Wrongful Acts** are committed.

2.  **Retention**

A separate **Retention** applies to each actual and/or alleged **Wrongful Act**. The **Retention** applies to **Damages** and **Claim Expenses** combined, and the **Company's** obligation to pay **Damages** and **Claim Expenses** applies only to the amount of **Damages** and **Claim Expenses** in excess of the **Retention**. All other rights, duties and obligations under this policy will remain the same regardless of whether or not the **Retention** has been exhausted, including, but not limited to, the **Company's** right and duty to investigate, defend and settle **Claims** set forth in Part 3.B. of this policy and **Insured's** notice and cooperation duties set forth in Part 6.B. of this policy. The Limit of Insurance will not be reduced by the application of the **Retention**. The amount of **Insured's Retention** is stated in Item 6. on the Declarations Page.

3.  **Reimbursement**

If, at the **Company's** option, the **Company** has paid any amounts for **Damages** or **Claim Expenses** in excess of the applicable Limit of Insurance or if the **Company** has paid part or all of any **Retention**, the **Insured** shall be liable to reimburse such amounts to the **Company** upon demand.

The **Company** will have the right to seek recovery from any **Insured** of any **Claim Expenses** or **Damages** incurred as a result of any portion of a **Claim** that is not covered by this policy.

**PART 4.    DEFINITIONS USED IN THIS POLICY**

A.  **"Application or Renewal Application"** means all of the following:

1.  The **Insured's** signed Miscellaneous Professional Liability insurance policy application;

2.  The **Insured's** signed Miscellaneous Professional Liability insurance renewal application, if this is a renewal of a policy issued by the **Company**; and

3.  All attachments to the **Application** or **Renewal Application** and any other information furnished to the **Company** for the purpose of applying for the insurance. All such attachments and information will be kept on file by the **Company**, deemed attached to the policy as if physically attached to it and shall become incorporated in and constitute a part of this policy.

B.  **"Bodily Injury"** means physical injury, sickness or disease sustained by a person, including death resulting from any of these at any time. **Bodily Injury** also includes disability, mental anguish, mental injury, shock or fright resulting in or from **Bodily Injury**.

C.  **"Claim"** means a demand or assertion of a legal right seeking **Damages** made against any **Insured**.

D.  **"Claim Expenses"** means expenses incurred by the **Company** or by the **Insured** with the **Company's** consent in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered **Claims**, whether paid by the **Company** or **Insured** with the **Company's** consent. **Claim Expenses** include:

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

1. Expenses the **Company** incurs;

2. Attorneys fees;

3. Costs taxed against an **Insured** in any suit defended by the **Company**;

4. Interest on the full amount of any judgment that accrues after entry of the judgment and before the **Company** has paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance;

5. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance.  The **Company** does not have to furnish these bonds; and

6. Reasonable expenses incurred by an **Insured** at the **Company's** request other than:

   a. Loss of earnings; and

   b. Salaries or other compensation paid to any **Insured**.

E. The "**Company**" means the insurance **Company** stated at the top of the Declarations Page.

F. "**Damages**" means money judgment, award or settlement, including those that are actual, statutory, punitive, multiplied or exemplary, except when applicable law prohibits insurance for punitive, multiplied or exemplary damages; and legal expense or other costs included as part of a judgment, award or settlement.

**Damages** does not include fines, penalties, taxes or disputes over or return of fees, deposits, commissions or charges for goods or services.

**Damages** also does not include costs of correcting, performing or re-performing **Insured Services** by:

1. Any **Insured**; or

2. Another party, when an **Insured** had the opportunity to correct, perform or reperform the service that generated the cost.

For purposes of insuring punitive damages under this policy, the law of the jurisdiction most favorable to the insurability of punitive damages shall control, provided such jurisdiction is where:

1. The punitive damages were awarded or imposed; or

2. Any **Insured** is incorporated or otherwise organized or has a place of business; or

3. The **Company** is incorporated or has its principal place of business.

G. "**First Inception Date**" is the Inception Date of the earliest errors and omissions insurance policy the **Company** issued to the **First Named Insured**, provided that there has been uninterrupted coverage by the **Company** for the **First Named Insured** from that earliest policy to this policy.

H. The "**First Named Insured**" is the **Named Insured** first listed on the Declarations Page.

I. "**Individual Insured**" means, individually and collectively:

1. Any **Named Insured** that is an individual person;

2. Any **Named Insured's** stockholders for their liability as stockholders;

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

3. Any **Named Insured's** and **Subsidiaries'** partners, officers, directors and employees, but only with respect to their activities within the scope of their duties in such capacity in the performance of **Insured Services** by the **Named Insured** or any **Subsidiary**;

4. Any **Named Insured's** and **Subsidiaries'** former partners, officers, directors and employees, but only with respect to their activities within the scope of their duties in the capacity of the **Named Insured's** partner, officer, director or employee in the performance of **Insured Services** by the **Named Insured**; and

5. In the event of death, incompetency, insolvency or bankruptcy of any **Insured**, the **Insured's** legal representative, but only with respect to their activities within the scope of their duties in such capacity in the performance of **Insured Services** by a **Named Insured**.

J. "**Insured**" means, individually and collectively:

1. A **Named Insured**; and

2. The **Individual Insureds**.

K. "**Insured Services**" means those services stated in Item 4. on the Declarations Page.

L. "**Named Insured**" means the person or entity listed in Item 1. of the Declarations Page and their **Subsidiaries**.

M. "**Policy Period**" means the period of time stated in Item 2. on the Declarations Page, or any shorter period resulting from policy cancellation.

N. "**Pollutant**" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to:

1. Smoke, vapor, soot, fumes, acids, alkalis, chemicals, lead, silica, mold or asbestos;

2. Hazardous, toxic or radioactive matter or nuclear radiation;

3. Waste, which includes material to be recycled, reconditioned or reclaimed; or

4. Any other pollutant as defined by applicable federal, state or local statutes, regulations, rulings or ordinances.

O. "**Property Damage**" means:

1. Physical injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that is not physically injured.

P. "**Retention**" means the amount stated in Item 6. on the Declarations Page and described in Part 3.E.2. of the policy.

Q. "**Retroactive Date**" means the date, if any, stated in Item 3. on the Declarations Page.

R. "**Subsidiary(ies)**" means any entity in which, and so long as, a **Named Insured**, either directly or indirectly:

1. Owns more than fifty (50) percent of the issued and outstanding voting equity securities; or

2. Controls voting rights representing the present right to vote for election or to appoint more than fifty (50) percent of the directors or trustees;

on or before the effective date of this policy, or after the effective date of this policy; provided that, with any respect to any entity that becomes a **Subsidiary** after the effective date of the policy, and the entity's

MLEO 1001 (10-06)                                                                                              Page 9 of 15

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc. All Rights Reserved.

gross revenues exceed 10% of **Insureds'** annual gross revenues at the Inception Date of the policy, the entity shall only be deemed a **Subsidiary** under this policy for a period of ninety (90) days from the date it became a **Subsidiary.**

If the **Insured** gives written notice, within ninety (90) days of the creation or acquisition of the **Subsidiary**, including the necessary underwriting information the **Company** may require and pay any reasonable additional premium as the **Company** may require, then the **Company** will issue an endorsement including such entity in the definition of **Subsidiary** for the duration of the **Policy Period.**

In all events there is no coverage for **Wrongful Acts** by any **Subsidiary**, or employee or agent thereof, occurring prior to the time such entity became a **Subsidiary.**

S. **"Wrongful Act"** means the conduct or alleged conduct by an **Insured** or any person or organization for whom an **Insured** is legally liable as described in Part 3.A.1. - 6.

All **Wrongful Acts** that:

1. Take place between the **Retroactive Date** and the end of the **Policy Period** of the last policy the **Company** issued to the **Insured;** and

2. Are related by common facts, circumstances, transactions, events and/or decisions;

will be treated as one **Wrongful Act.**

PART 5.   **EXCLUSIONS – What the Company Does Not Insure**

A. The **Company** is not obligated to pay **Damages** or **Claim Expenses** or defend **Claims** for or arising directly or indirectly out of:

1. **Bodily Injury** or **Property Damage.**

2. An act or omission that a jury, court or arbitrator finds dishonest, fraudulent, criminal, malicious or was committed while knowing it was wrongful. This exclusion does not apply to any **Individual Insured** that did not commit, acquiesce or participate in the actions that gave rise to the **Claim.**

3. Infringement of:

   a. Copyright;

   b. Trademark, trade dress, trade name, service mark, service name, title or slogan; or

   c. Patent.

4. Unfair competition, restraint of trade or any other violation of antitrust laws.

5. Harassment, misconduct or discrimination because of or relating to:

   a. Race, creed, color or age;

   b. Sex, sexual preference, national origin or religion; or

   c. Handicap, disability or marital status,

   but only if the harassment, misconduct or discrimination was knowingly committed. The **Company** will defend such a **Claim** until a judgment or other final adjudication by a jury, court or arbitrator establishes such conduct. The **Company** will have the right to seek reimbursement from any **Insured** for any **Claim Expenses** paid to defend any **Claim** that such a judgment or final adjudication finds to have involved a harassment, misconduct or discrimination as described above which was knowingly committed.

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc. All Rights Reserved.

6. Gain, profit or advantage to which any **Insured** is not legally entitled.

7. Any **Insured's** acts related to any pension, healthcare, welfare, profit sharing, mutual or investment plans, funds or trusts; or any violation of any provisions of the Employee Retirement Income Security Act of 1974, or any amendment, regulation, ruling or order issued pursuant to the Act.

8. Violation of The Security Act of 1933 as amended, The Securities Exchange Act of 1934 as amended, the Investment Advisor's Act of 1940, any state blue sky or securities law, any similar state or federal law, or any order, ruling or regulation issued pursuant to the above laws.

9. Insolvency or bankruptcy of:

   a. Any **Insured**; or

   b. Any enterprise in which any **Insured** owns an interest.

10. The actual or threatened discharge, dispersal or release of any **Pollutant**; or the creation of an injurious condition involving any **Pollutant**; or the existence of any **Pollutant** on any property; or the clean up, removal, testing, monitoring, containment, treatment, detoxification or neutralization of any **Pollutant**.

   This Exclusion A. 10. is effective whether or not the pollution was sudden, accidental, gradual, intended, expected or preventable or whether or not any **Insured** caused or contributed to the pollution.

B. The **Company** is not obligated to pay **Damages** or **Claim Expenses** or defend **Claims** made by:

1. Any enterprise that is a parent, affiliate or partner of any **Insured**;

2. Any enterprise directly or indirectly controlled, operated or managed by the **Insured** or an enterprise described in Part 5.B.1. above;

3. Any **Insured**; or

4. Any present, former or prospective employees, officers, directors of any **Insured** when the **Claim** is in any way related to the present, former or prospective employment relations between the claimant and any **Insured**.

C. The **Company** is not obligated to pay **Damages** or **Claim Expenses** or defend **Claims** for the breach of express warranties, guarantees or contracts; provided, however, with respect to allegations of breach of contract this exclusion shall not apply to any liability that would have attached in the absence of such contract.

### PART 6.   GENERAL CONDITIONS

#### A. Special Rights and Duties of the First Named Insured

The **First Named Insured** is responsible for the payment of all premiums and **Retentions**. The **First Named Insured** has exclusive authority to act on behalf of all of the **Insureds** with respect to matters relating to this policy, including:

1. Giving and receiving notice of cancellation and nonrenewal;

2. Receiving refunds;

3. Agreeing to any changes to this policy; and

4. Purchasing an Extended Reporting Period.

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc. All Rights Reserved.

B. **What to Do if an Insured has a Claim or Suit**

1. If there is a **Claim**, the **Insured** must do the following after the **Named Insured** has knowledge of the **Claim**:

   a. Notify the **Company** in writing as soon as practicable; this notice must:

      (1) Be sent to the **Company**, in care of the **Company's** AXIS PRO business unit, Two Pershing Square, Suite 800, 2300 Main Street, Kansas City, Missouri 64108-2404; and

      (2) Contain details that identify the **Insured**, the claimant and also reasonably obtainable information concerning the time, place and other details of the **Wrongful Act** and **Claim**;

   b. Immediately send the **Company** copies of all demands, notices, summonses or legal papers received in connection with the **Claim**;

   c. Authorize the **Company** to obtain records and other information;

   d. Cooperate with and assist the **Company** in the investigation, settlement or defense of the **Claim**; and

   e. Assist the **Company**, upon the **Company's** request, in enforcing any rights of contribution or indemnity against another who may be liable to any **Insured**.

2. No **Insured** will, except at the **Insured's** own cost, voluntarily make a payment, admit liability, assume any obligation or incur any expense without the **Company's** prior written consent.

3. When Part 6.B.1. requires that an **Insured** provide notice of a **Claim** we will consider the **Insured** to have knowledge of that **Claim** only when the **Named Insured's** chairperson of the board of directors, president, chief executive officer, chief operating officer, chief financial officer, risk manager or in-house counsel has that knowledge.

C. **Legal Action Against The Company**

No person or organization has a right under this insurance:

1. To join the **Company** as a party or otherwise bring the **Company** into a suit asking for **Damages** from any **Insured**; or

2. To sue the **Company** on this insurance unless all of the policy's provisions have been fully complied with.

A person or organization may sue the **Company** to recover on "an agreed settlement" or on a final judgment against an **Insured** obtained after an actual trial; but the **Company** will not be liable for **Damages** and **Claim Expenses** that are not payable under the provisions of this insurance or that are in excess of the applicable Limit of Insurance. "An agreed settlement" means a settlement and release of liability signed by the **Company**, the **Insured** and the claimant or the claimant's legal representative.

D. **Bankruptcy**

The bankruptcy or insolvency of the **Insured** or **Insured's** estate will not relieve the **Company** of the **Company's** obligation under this insurance. However, this insurance will not apply to liability directly or indirectly due to such bankruptcy, insolvency, receivership or subsequent liquidation.

E. **Other Insurance**

If other valid and collectible insurance is available to any **Insured** for any **Claim** the **Company** covers, this insurance is excess over such other insurance, except when the other insurance is purchased by the **Insured** only to apply in excess of this insurance and no other insurance exists.

F.  **Transfer of Rights of Recovery Against Others to The Company**

An **Insured** and the **Company** may have rights to recover all or part of any payment the **Insured** or the **Company** make under this insurance. If so, those rights are transferred to the **Company**.

**Insured** must do nothing to impair such rights. At the **Company's** request, **Insured** will bring suit or transfer those rights to the **Company** and help the **Company** enforce them. Any recoveries shall be applied as follows:

1.  First, to the **Company** up to the amount of the **Company's** payment for **Damages** and **Claim Expenses**;

2.  Then, to the **First Named Insured** as recovery of **Retention** amounts paid as **Damages** and **Claim Expenses**.

G.  **Changes in Policy Provisions; Changes in Insured's Operations**

1.  This policy contains all the agreements between the **Insured** and the **Company** concerning the insurance afforded by this policy. This policy's provisions can be amended or waived only by written endorsement issued by the **Company** and made a part of this policy.

2.  This policy applies only to the **Insured Services** described on the Declarations Page and **Insured(s)** as defined in the policy or by endorsement as of the Inception Date of the **Policy Period**. This policy shall not apply to any other services or enterprises unless such services or enterprises are added by written endorsement issued by the **Company** and made a part of this policy. If an endorsement is added, **Insured** shall promptly pay any additional premium which may become due.

H.  **Transfer of Insured's Rights and Duties Under the Policy**

**Insured's** rights and duties under this policy may not be transferred without the **Company's** written consent.

I.  **Cancellation**

1.  The **First Named Insured** may cancel this policy by mailing or delivering to the **Company** or the **Company's** authorized representative advance written notice of cancellation.

2.  The **Company** may cancel this policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

    a.  10 days before the effective date of cancellation if the **Company** cancels for nonpayment of premium; or

    b.  30 days before the effective date of cancellation if the **Company** cancels for any other reason.

3.  If this policy is canceled, the **Company** will send the **First Named Insured** any premium refund due. If the **Company** cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund, if any, will be 90% of pro rata. The cancellation will be effective even if the **Company** has not made or offered a refund.

4.  Notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on that date.

5.  The **Company** will mail or deliver the notice to the address stated in Item 1. on the Declarations Page.

6.  If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.  Delivery of the notice will be the same as mailing.

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

Complaint Page 40

**J. Nonrenewal**

The **Company** may elect not to renew this policy by mailing or delivering written notice of nonrenewal to the **First Named Insured's** last mailing address known to the **Company**. The **Company** will mail or deliver the notice at least sixty (60) days before the expiration of the policy.

If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**K. Representations**

By accepting this policy, the **Insured** agrees:

1. The statements in the **Application or Renewal Application** for this insurance furnished to the **Company** are accurate and complete;

2. Those statements furnished to the **Company** are representations the **First Named Insured** made to the **Company** on behalf of all **Insureds;**

3. Those representations are a material inducement to the **Company** to issue this policy;

4. The **Company** has issued this policy in reliance upon those representations; and

5. If this policy is a renewal of a policy issued by the **Company**, the **Insured's** representations include the representations made in **Insured's** original signed Miscellaneous Professional Liability Insurance Policy application, but only as of the inception date of the original policy issued by the **Company**. The representations the **Insured** makes on the **Insured's** Miscellaneous Professional Liability Insurance Policy renewal application(s) apply as of the Inception Date of **Insured's** renewal policy(ies).

**L. Severability**

1. With regard to the information provided on any insurance application, only facts pertaining to and knowledge possessed by any of the **First Named Insured's** chairperson of the board of directors, president, chief executive officer, chief operating officer, chief financial officer, risk manager, in-house counsel or any person whose signature appears on the application, shall be imputed to **Insured**.


IN WITNESS WHEREOF, the **Company** has caused the policy to be signed by the **Company's** President and Secretary; but, this policy is not binding unless countersigned on the Declarations Page by the **Company's** authorized representative.


President                                Secretary

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc. All Rights Reserved.

**PART 7.   ENDORSEMENTS**

Endorsements are attached to the policy.

© 1992, 1997, 2002, 2006 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.